No. 40064.—Petitions 5657–R, etc., of Canada Atlantic Grain Export Co., Inc· (Buffalo).

KINCHELOE, Judge: These petitions were filed under section 489 of the Tariff Act of 1930 praying for the remission of additional duties accruing under that section by reason of the final appraised values of the merchandise exceeding the entered values on importations of grain from Canada and entered at the port of Buffalo.   By agreement of counsel, both for the petitioner and the respondent, these·three petitions for·remission were consolidated for trial.

At the outset, we believe it of some value in this case to state that the invoices, the subject of these petitions, were previously the subject of three appeals to reappraisement.   Two of those appeals were filed by the importer, and one was a collector's appeal.   Before the court sitting in reappraisement, the appeals were submitted on the question of law to determine the time of exportation of the merchandise, it having been agreed that the merchandise was shipped on steamer from Fort William or Port Arthur; that the steamer stopped at the port of Port Colbourne, Canada, for the purpose of discharging part of its cargo, but did not load or discharge any of this imported wheat; and that said merchandise subsequently arrived at Buffalo, where it was entered.   The court held that the dates of sailing from Port Colbourne, Canada, were the dates of exportation, and therefore sustained the appraised values.

At the trial of these petitions two witnesses appeared on behalf of the petitioner. The witness, Moses Cohen, stated he is president of the Canada Atlantic Grain Export Co., the petitioner herein; that he purchased the wheat covered by these invoices at Fort William, Canada, and ordered it shipped to Buffalo; that he sent the consular invoices to his forwarding agents at Buffalo, with instructions to make entry at the values shown thereon, and that he had no knowledge that the steamers carrying the merchandise would stop at Port Colbourne, Canada.

At this point in the witness' testimony, there were offered and received as Collective Exhibit 1 photostat copies of the bills of lading covering shipment of this grain.   An examination of those bills of lading indicates direct shipment of the merchandise from Fort William or Port Arthur to Buffalo.   There is nothing thereon to show that the steamer intended to stop at Port Colbourne.

The witness further testified that the shipment of this particular grade or quality of wheat, No. 6 Manitoba wheat, unfit for human consumption, was a special business of his company brought about by the drought at that time in the southwestern part ·of the United States;. that there had been twenty-four shipments of this grade of wheat, all within the period of a year; and that in none of the shipments, except those covered by the petitions before the .court, did the steamer stop at any ports from Fort William or Port Arthur to Buffalo; and that in every instance the bill of lading showed direct shipment from Fort William or Port Arthur to Buffalo.

The second witness called by the petitioner was the secretary and traffic manager of the Abell Forwarding Co., the agent of the petitioner, who entered the merchandise involved herein at the port of Buffalo. He stated that the business of his concern is that of forwarding agent, to receive and ship grain; and that he has been connected with the company since 1923. It appears from the testimony of this witness that he made approximately 125 entries of wheat from Canada, of the quality of this merchandise, for the petitioner herein during the period from April 29, 1935, to September 19, 1936, and that prior to the first of such entries the appraiser asked him to secure the foreign-market value of the merchandise from a disinterested party, whereupon it was arranged by him with the Secretary of the Winnipeg Grain Exchange to furnish the market value on the date of shipment from Fort William, which the said official of said exchange submitted, first in the form of a telegram and then by letter.

The witness further testified that his practice of making entry at the consular invoice values which agreed with the quotations received from the same Winnipeg Grain Exchange, copy of which quotation was always attached to the entry, was being accepted by the appraiser; that some of those entries covered shipments where the steamer stopped at Port Colbourne; and that it was not until he attempted to enter the merchandise covered by entry 1251, which is the subject of petition 5659–R, in this case, on September 9, 1936, that the appraiser objected to his entered value, and asked for the market value of the wheat at the time the steamer sailed from Port Colbourne, which information was secured by the witness from the Secretary of the Winnipeg Grain Exchange and submitted to the appraiser. He further stated that that time, on September 9, 1936, in connection with the said entry 1251, was the first time that the appraiser had ever disputed the value of merchandise on entries made by him.

Concerning the three entries, the subject of the petitions involved in this case, the witness was asked whether the fact that the steamer had stopped at Port Colbourne did not have some influence on him in fixing his entered value, and he answered it had "no significance whatsoever." He further testified that he knew before he made these entries that the steamers carrying this merchandise had stopped at Port Colbourne, but "I absolutely didn't give it any thought"; and that he honestly believed that the proper value was the price at the original place of shipment.

The burden placed upon the petitioner in this case is to show that in entering the imported merchandise at a less value than that returned upon final appraisement, it did so without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise.

In our judgment, the leading and controlling decision in a petition for the remission of additional duties is the case of *United States* v. *Fish*, 268 U. S. 607. That case was an appeal by the importer from a decision of the Board of General Appraisers (now the United States Customs Court) denying the petition for remission of additional duties. An excerpt from the opinion of the board in that case is as follows (see record page 13, suit 2266):

\* \* \* there is absolutely no evidence from which we can conclude what was the intent of the person making the entry. The most that can be said about the importer was that he was *very careless*. Sometimes neglect is as bad in law as acts of commission. [Italics ours.]

Chief Justice Taft, in writing the opinion, said in part as follows:

Upon the merits of the case, we think the Court of Customs Appeals was right and that the finding of the Board of General Appraisers did not respond to the requirement of the statute. The *issue* to be found by the Board was whether

the importer showed by his evidence that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. The issue presented to the Board was, "Has the importer sustained the negative in this regard?" Merely to find that the importer was *careless* is not a finding sufficient to justify the Board in deciding whether there should be a remission. Both the importer and the Government are entitled to a finding either that there was no intent to defraud or that the importer did not sustain his burden that there was no such intent. [Italics ours.]

Also in the case of *Linen Thread Co.* v. *United States* (13 Ct. Cust. Appls. 395, T. D. 41322), our appellate court said in part as follows:

\* \* \* The importer and the customs broker may have been *careless, negligent, or lacking in diligence* and for such delinquencies the goods might be subjected to additional duties if the statute so provided. The statute does not so provide, however, and mere *carelessness, negligence, or want of diligence* on the part of the importer, coupled with no fact or circumstances which shows or reasonably tends to show that there was an intention on his part to defraud the revenue or to conceal or misrepresent the facts or to deceive the appraiser as to the value of the merchandise, does not justify the conclusion that such an intention existed. [Italics ours.]

We have carefully considered this entire record and closely observed the demeanor of the witnesses while on the stand testifying in this case and we are of the opinion that the petitioner has established that in entering this merchandise at the invoice values, which proved to be lower than the proper dutiable values, it did so without any intention on its part to defraud the revenue of the United States or to conceal or misrepresent the facts, or to deceive the appraiser as to the value of the merchandise.

The petitions are therefore granted. Judgment will be rendered accordingly.